NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
Nicholas D. Dickinson
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336

Email: Nicholas.dickinson@usdoj.gov
*Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CONOR CLIMO,<br><br>Defendant. | No. 2:19-cr-232-JCM-NJK<br><br>**Plea Agreement for Defendant Conor Climo Pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B)** |

This plea agreement between Conor Climo ("defendant") and the United States Attorney's Office for the District of Nevada (the "USAO") sets forth the parties' agreement regarding the criminal charges referenced herein and the applicable sentences in the above-captioned case. This agreement binds only defendant and the USAO and does not bind the district court, the U.S. Probation Office, or any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not prohibit the USAO or any agency or third party from seeking any other civil or administrative remedies, including civil forfeiture *in rem,* directly or indirectly against defendant or defendant's property.

This agreement becomes effective upon signature by defendant, defendant's counsel, and an Assistant United States Attorney.

# I. DEFENDANT'S OBLIGATIONS

1.    Defendant agrees to:

    a.    At the earliest opportunity requested by the USAO and provided by the district court, appear and plead guilty to Count One of the indictment in this case, which charges defendant with Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

    b.    Stipulate to the facts agreed to in this agreement;

    c.    Abide by all agreements regarding sentencing contained in this agreement;

    d.    Not seek to withdraw defendant's guilty plea once it is entered;

    e.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

    f.    Not commit any federal, state, or local crime;

    g.    Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

    h.    Agree to and not oppose the imposition of the following special conditions of supervised release:

    i.    Mental Health Treatment – You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay the costs of the program.

    ii.    Computer Monitoring – You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

1     iii.  Computer Search – Monitoring Software – To ensure compliance

2 with the computer monitoring condition, you must allow the probation officer to conduct

3 periodic, unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject

4 to computer monitoring. These searches shall be conducted for the purposes of determining

5 whether the computer contains any prohibited data prior to installation of the monitoring

6 software; to determine whether the monitoring software is functioning effectively after its

7 installation; and to determine whether there have been attempts to circumvent the monitoring

8 software after its installation. You must warn any other people who use these computers that the

9 computers may be subject to searches pursuant to this condition.

10     iv.  Search and Seizure – You must submit your person, property,

11 house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other

12 electronic communications or data storage devices or media, or office, to a search conducted by

13 a United States Probation Officer. Failure to submit to a search may be grounds for revocation of

14 release. You must warn any other occupants that the premises may be subject to searches

15 pursuant to this condition. The probation officer may conduct a search under this condition only

16 when reasonable suspicion exists that you have violated a condition of supervision and that the

17 areas to be searched contain evidence of this violation. Any search must be conducted at a

18 reasonable time and in a reasonable manner.

19       **II. THE USAO'S OBLIGATIONS**

20  2.  The USAO agrees to:

21    a.  Stipulate to facts agreed to in this agreement;

22    b.  Abide by all agreements regarding sentencing contained in this agreement;

23    c.  At sentencing, provided that defendant demonstrates an acceptance of

24 responsibility for the offense up to and including the time of sentencing, recommend a two-level

1   reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1, and

2   move for an additional one-level reduction if available under that section;

3          d.     Not bring any additional charges against defendant arising out of the

4   investigation in the District of Nevada that culminated in this agreement and based on conduct

5   known to the USAO. However, the USAO reserves the right to prosecute defendant for (a) any

6   crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations (including

7   conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant agrees that

8   the district court at sentencing may consider any uncharged conduct in determining the

9   applicable sentencing guidelines range, the propriety and extent of any departure from that

10  range, and the sentence to be imposed after consideration of the sentencing guidelines and all

11  other relevant factors under 18 U.S.C. § 3553(a).

12                          **III. ELEMENTS OF THE OFFENSE[S]**

13     3.     <u>Count One</u>: The elements of Possession of an Unregistered Firearm under 26

14  U.S.C. §§ 5841, 5861(d), and 5871 are as follows:

15     <u>First</u>:        Defendant  knowingly  possessed  components  that  could  be  readily

16                      asembeled into a destructive device such as an explosive, incendiary, or

17                      bomb;

18     <u>Second</u>:     Defendant intended to use those components as a weapon; and

19     <u>Third</u>:       The components were not registered to defendant in the National Firearms

20                      Registration and Transfer Record.

21  *See* Ninth Circuit Model Criminal Jury Instruction 9.35 (2010 ed.). "Any device composed of

22  combustible material capable of producing sufficient heat to destroy property of any kind and

23  having components designed to ignite that combustible material is under the law an incendiary

24

device similar to a fire or incendiary bomb." *United States v. Hedgcorth*, 873 F.2d 1307, 1311 (9th Cir. 1989).

### IV. CONSEQUENCES OF CONVICTION

4.   <u>Maximum Statutory Penalties</u>:

     a.   Defendant understands that the statutory maximum sentence the district court can impose for a violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 as charged in Count One, is: ten year imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5.   <u>Parole Abolished</u>: Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

6.   <u>Supervised Release</u>: Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.   <u>Factors under 18 U.S.C. § 3553</u>: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence limit the district court's discretion in determining defendant's sentence.

8.   <u>Potential Collateral Consequences of Conviction</u>: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

1    rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the

2    right to serve on a jury. Defendant understands that once the district court accepts defendant's

3    guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.

4    Defendant understands that the conviction in this case may also subject defendant to various

5    other collateral consequences, including but not limited to revocation of probation, parole, or

6    supervised release in another case and suspension or revocation of a professional license.

7    Defendant understands that unanticipated collateral consequences will not serve as grounds to

8    withdraw defendant's guilty plea.

9         9.    <u>Potential Removal/Deportation Consequences of Conviction</u>: Defendant

10    understands that, if defendant is not a United States citizen, the felony conviction in this case

11    may subject defendant to removal, also known as deportation, which may, under some

12    circumstances, be mandatory; denial of citizenship; and denial of admission to the United States

13    in the future. The district court cannot, and defendant's attorney also may not be able to, advise

14    defendant fully regarding the immigration consequences of the felony conviction in this case.

15    Defendant understands that unexpected immigration consequences will not serve as grounds to

16    withdraw defendant's guilty plea.

17                             **V. FACTUAL BASIS**

18         10.    Defendant admits that defendant is, in fact, guilty of the offense to which

19    defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to

20    trial instead of pleading guilty, the USAO could prove defendant's guilt beyond a reasonable

21    doubt. Defendant further acknowledges that defendant's admissions and declarations of fact set

22    forth below satisfy every element of the charged offense. Defendant waives any potential future

23    claim that the facts defendant admitted below are insufficient to satisfy the elements of the

24

1  charged offense. Defendant admits and declares under penalty of perjury that the facts set forth

2  below are true and correct:

3      11.    In April 2019, the Las Vegas FBI Joint Terrorism Taskforce ("JTTF") began

4  investigating defendant based on information that defendant was communicating over the online

5  platform Wire with individuals who identified with the white supremacist extremist group

6  Feuerkrieg Division ("FKD"), which is an offshoot of the US-based white supremacist extremist

7  group Atomwaffen Division ("AWD"). Wire is an encrypted communication program on which

8  users can transmit text messages and files.

9      12.    In May 2019, an FBI confidential human source ("CHS") established contact with

10  defendant on Wire. The CHS told defendant that the CHS was a "far-right ally" who found a

11  website identifying defendant as a member of AWD. From that point on, defendant maintained

12  regular contact with the CHS.

13      13.    During initial conversations with the CHS, defendant acknowledged being in the

14  Las Vegas area. Defendant discussed how to build a "Self Contained Molotov" by using

15  "gasoline + sulfuric acid inside a Double Magnum Wine Bottle."  On or about May 10, 2019,

16  the CHS had an online conversation with defendant during which defendant discussed setting

17  fire to a Las Vegas synagogue and making Molotov Cocktails and Urea Nitrate Improvised

18  Explosive Devices.

19      14.    On May 23, 2019, an FBI online covert employee ("OCE") established contact

20  with defendnat on Wire through an introduction by the CHS. Between June 19, 2019 and July 8,

21  2019, during online conversations with the OCE, defendant discussed conducting surveillance

22  on Fremont Street in Downtown Las Vegas in preparation for a potential attack, specifically

23  noting a bar that defendant claimed catered to homosexuals.

24

15.     Between July 5, 2019 and July 15, 2019, during online conversations with the OCE, defendant provided more detail about his plan to carry out an attack on a Las Vegas synagogue using an incendiary device. Defendant first sent the OCE screenshots of Google Maps images of synagogues in the Las Vegas area. Defendant further discussed a plan for escaping after the attack and sent the FBI OCE a screenshot of a satellite image from Google Maps of the area around the synagogue focusing on the escape route.

16.     On August 8, 2019, the JTTF executed a court authorized federal search warrant at defendant's Las Vegas Residence. During the search, an FBI Special Agent Bomb Technician ("SABT") located components that could be readily asembeled into a destructive device such as an explosive, incendiary, or bomb. SABT located a bottle of "Pot Perm Plus" Potassium Permanganate, which can be used as strong oxidizing agent, on the top shelf of defendant's bedroom closet. Also located on defendant's closet shelf were separate jars of thermite, sulfuric acid, and lithium aluminum hydride, which can be used as fuels.

17.     SABT further located a soldering iron, wires, circuit boards, and other electrical components in defendant's bedroom that are consistent with items needed to construct an (Improvised Explosive Device) ("IED") circuit. SABT found notebooks and papers containing numerous hand drawn schematics of IEDs and incendiary devices.

18.     In the garage of the house, SABT located multiple large commercial fireworks, empty firework "mortar" tubes, and more than five feet of hobby fuse, multiple cans of brake fluid, and additional fuels. Hobby fuse is commonly used to create a delay in explosives and incendiaries.

19.     Agents seized an AR-15 rifle and a bolt-action rifle from defendant's bedroom.

20.     During the execution of the search warrant, defendant agreed to voluntarily talk with the FBI. When the FBI arrested defendant, he waived his Miranda rights and continued talking. During the interview, defendant provided the following information.

21.     Defendant admitted buying the chemicals and electronic components found in his room.  Defendant admitted to talking with others online using encrypted chat applications. Defendant admitted he has been online talking about making and using explosives.

22.     Defendant expressed biases and hatred against various racial and religious groups. Defendant stated that he wanted to do more against the groups he hated by carrying out violent attacks against them. Defendant admitted to discussing plans for violent attacks online against the Anti-Defamation League, a local Las Vegas Synagogue, and a local bar.

23.     Defendant admits that he has no firearms or destructive devices registered to him in the National Firearm Registration and Transfer Record.

## VI. SENTENCING FACTORS

24.     Discretionary Nature of Sentencing Guidelines: Defendant understands that in determining defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the sentencing guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated sentencing guidelines range, and that after considering the sentencing guidelines and the other § 3553(a) factors, the district court will be free to exercise its discretion to impose any sentence it finds appropriate.

25.     Offense Level Calculations: The parties jointly agree and stipulate that, in calculating Defendant's advisory guidelines sentencing range, the Court should use the following base offense level and adjustments; acknowledge that these stipulations do not bind the district

1  court; and agree that they will not seek to apply or advocate for the use of any other base offense

2  level or any other specific offense characteristics, enhancements, or reductions in calculating the

3  advisory guidelines range.

4      Base Offense Level [USSG §2K2.1(a)(5)]:        18

5      [Destructive Device] [USSG §2K2.1(b)(3)(B)]:        +2

6              Adjusted Offense Level:        20

7      26.    Reduction for Acceptance of Responsibility: Under USSG § 3E1.1(a), the USAO

8  will recommend that defendant receive a two-level downward adjustment for acceptance of

9  responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the

10  guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the

11  amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit

12  facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides

13  false or misleading information to the USAO, the Court, Pretrial Services, or the Probation

14  Office; (e) denies involvement in the offense or provides conflicting statements regarding

15  defendant's involvement or falsely denies or frivolously contests conduct relevant to the offense;

16  (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit any crime;

17  (h) fails to appear in court; or (i) violates the conditions of pretrial release.

18      Under USSG § 3E1.1(b), if the district court determines that defendant's total offense

19  level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two-level

20  downward adjustment pursuant to the preceding paragraph, the USAO will move for an

21  additional one-level downward adjustment for acceptance of responsibility before sentencing

22  because defendant communicated defendant's decision to plead guilty in a timely manner that

23  enabled the USAO to avoid preparing for trial and to efficiently allocate its resources.

24

27. <u>Criminal History Category</u>. Defendant acknowledges that the district court may base defendant's sentence in part on defendant's criminal record or criminal history. The district court will determine defendant's criminal history category under the sentencing guidelines.

28. <u>Additional Sentencing Information</u>: The stipulated sentencing guidelines calculations are based on information now known to the parties. Defendant understands that both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying relevant information to the U.S. Probation and Pretrial Services Offices and the district court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the district court's sentencing guidelines calculations and determination of sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the U.S. Probation and Pretrial Services Offices and the district court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

Defendant acknowledges that the U.S. Probation Office may calculate the sentencing guidelines differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the district court may rely on this and other additional information as it calculates the sentencing guidelines range and makes other sentencing determinations, and the district court's reliance on such information shall not be grounds for defendant to withdraw defendant's guilty plea.

11

# VII. POSITIONS REGARDING SENTENCING

29.     The parties will jointly recommend that the district court impose a sentence within the advisory guideline range as determined by the district court. Defendant will not, either explicitly or implicitly, argue for a downward departure or variance from defendant's offense level or criminal history category. In agreeing to this sentencing recommendation, the parties have taken into consideration all of the factors set forth in 18 U.S.C. § 3553(a) and conclude that guideline sentence is a reasonable sentence. Defendant acknowledges that the district court does not have to follow the recommendation of either party.

30.     Notwithstanding its agreement to recommend a sentence as described above, the USAO reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

31.     If defendant commits any act that results in the Court finding that defendant is not entitled to a downward adjustment for acceptance of responsibility, the USAO is entitled to argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a).  In any such event, Defendant remains bound by the provisions of this agreement and shall not have the right to withdraw defendant's guilty plea.

# VIII. WAIVER OF CONSTITUTIONAL RIGHTS

32.     Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.     The right to persist in a plea of not guilty;

      b.     The right to a speedy and public trial by jury;

      c.     The right to be represented by counsel—and if necessary have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to

be represented by counsel—and if necessary have the court appoint counsel—at every other stage of the proceeding;

        d.      The right to be presumed innocent and to have the burden of proof placed on the USAO to prove defendant guilty beyond a reasonable doubt;

        e.      The right to confront and cross-examine witnesses against defendant;

        f.      The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify;

        g.      The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant; and

        h.      The right to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and any other pretrial motions that have been filed or could be filed.

        i.      Understanding that the investigating agency has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the agency may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

## IX. WAIVER OF APPELLATE RIGHTS

33.    <u>Waiver of Appellate Rights</u>. Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the district court; (b) the right to appeal the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction, including but not limited to the constitutionality of the statute of conviction; any other aspect of the sentence; and any order of restitution or forfeiture.

34.     Defendant reserves only the right to appeal any portion of the sentence that is an upward departure or variance from the applicable Sentencing Guideline range as determined by the district court.

35.     <u>Waiver of Post-Conviction Rights</u>. Defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

36.     <u>Preservation of Evidence</u>: Defendant acknowledges that the USAO and the agencies investigating this case are not obligated or required to preserve any evidence obtained in the investigation of this case.

## X. RESULT OF WITHDRAWAL OF GUILTY PLEA OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

37.     <u>Consequence of withdrawal of guilty plea</u>: Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

38.     <u>Consequence of vacatur, reversal, or set-aside</u>: Defendant agrees that if

defendant's conviction is vacated, reversed, or set aside, both the USAO and defendant will be

released from all their obligations under this agreement, except that, should the USAO choose to

pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any

applicable statute of limitations will be tolled between the date of defendant's signing of this

agreement and the filing commencing any such action; and (ii) defendant waives and gives up all

defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent that such defenses existed as of

the date of defendant's signing this agreement.

## XII. BREACH OF AGREEMENT

39.     Defendant agrees that if, at any time after this agreement becomes effective,

defendant knowingly violates or fails to perform any of defendant's obligations under this

agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's

obligations are material, a single breach of this agreement is sufficient for the USAO to declare a

breach, and defendant shall not be deemed to have cured a breach without the express agreement

of the USAO in writing. If the USAO declares this agreement breached, and the district court

finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea

pursuant to this agreement, defendant will remain bound by the provisions of this agreement and

will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its

obligations under this agreement.

40.     Following the Court's finding of a knowing breach of this agreement by defendant,

should the USAO choose to pursue any charge that was either dismissed or not filed as a result

of this agreement, then:

a.     Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.     Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.     Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## XIII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES.

41.     Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

42.     Defendant understands that both defendant and the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

43.     Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that

1    reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all

2    defendant's obligations under this agreement. Defendant understands that no one—not the

3    prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise

4    regarding the sentence defendant will receive, except that it will be within the statutory

5    maximum.

6                    **XIV. ADDITIONAL ACKNOWLEDGMENTS**

7         44.    The Defendant acknowledges that:

8              a.      Defendant read this agreement and defendant understands its terms and

9    conditions.

10             b.      Defendant had adequate time to discuss this case, the evidence, and this

11   agreement with defendant's attorney.

12             c.      Defendant carefully and thoroughly discussed all terms of this agreement

13   with defendant's attorney.

14             d.      Defendant understands the terms of this agreement and voluntarily agrees

15   to those terms.

16             e.      Defendant has discussed with defendant's attorney the following: the

17   evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that

18   might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. 3553(a);

19   the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

20             f.      The representations contained in this agreement are true and correct,

21   including the factual basis for defendant's offense set forth in this agreement.

22             g.      Defendant was not under the influence of any alcohol, drug, or medicine

23   that would impair defendant's ability to understand the agreement when defendant considered

24   signing this agreement and when defendant signed it.

17

45.     Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty plea knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

46.     Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

47.     Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

48.     Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charges and chooses to take advantage of the promises set forth in this agreement and for no other reason.

///
///
///
///
///
///
///
///
///
///

1

## XV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2       49.     The parties agree that this agreement will be considered part of the record of

3   defendant's guilty plea hearing as if the entire agreement had been read into the record of the

4   proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE DISTRICT OF NEVADA

7
    NICHOLAS A. TRUTANICH
8   United States Attorney

9   _____          _____1/17/20_____

10  NICHOLAS D. DICKINSON                Date
    Assistant United States Attorney

11

12  _____          _____12/14/19_____

13  CONOR CLIMO                          Date
    Defendant

14  _____          _____12/19/19_____

15  PAUL RIDDLE                          Date
    Assistant Federal Public Defender
16  Attorney for Defendant CLIMO

17

18

19

20

21

22

23

24

19